UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

REBECCA H.,

                    Plaintiff,

v.                                             6:20-CV-01058
                                                    (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON           STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION            TIMOTHY SEAN BOLEN, ESQ.
OFFICE OF THE GENERAL COUNSEL
Counsel for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

      Plaintiff Rebecca H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). (Dkt. No. 1.) Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 5.) This case has proceeded in accordance with General Order 18 and is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

(Dkt. Nos. 11, 18.) For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

I.  RELEVANT BACKGROUND

   A.  Factual Background

Plaintiff was born in 1975 and has a bachelor's degree in computer science. (Administrative Transcript[1] at 34, 226, 354.) Generally, Plaintiff's alleged disability consists of "fibromyalgia, migraines, bilateral occipital neuralgia, bulging disc, degenerative disc diseases, spondylosis, bilateral sacroiliitis, cervicalgia, posterior tibial tendon dysfunction, [and] hand issues." (T. at 78.) Her alleged disability onset date is March 8, 2018. (T. at 186-87.) Her past relevant work consists of software engineer and financial-aid counselor. (T. at 34-39, 251-54.) She also worked 12 hours per week as a "prep cook" in 2019. (T. at 39-40.)

   B.  Procedural History

On November 19, 2018, Plaintiff filed an application with the Social Security Administration ("SSA") for benefits under Title II of the Social Security Act. (T. at 186-87.) The application was denied initially on January 24, 2019, and upon reconsideration on March 15, 2019, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 1-6, 90, 118-29, 132-33.) On February 14, 2019, the Plaintiff protectively filed an application with the Social Security Administration for benefits under Title XVI of the Social Security Act, which was escalated to the hearing level. (T. at 203-08.) On December 3, 2019, Plaintiff appeared before ALJ Bruce S. Fein. (T. at 28-61.) On January 24, 2020, ALJ Fein issued a

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

written decision finding Plaintiff not disabled under the Social Security Act ("Act"). (T. at 10-21.) On August 14, 2020, the Appeal's Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. at 1-2.) Thereafter, Plaintiff timely sought judicial review in this Court. (Dkt. No. 1.)

      **C.**     **The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law. (T. 10-21.) Plaintiff meets the insured status requirements through March 31, 2020, and has not engaged in substantial gainful activity since March 8, 2018, the alleged onset date. (T. at 16.) She has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; cervicalgia, status post discectomy and fusion surgery; fibromyalgia; and posterior tibial tendon dysfunction. (T. at 13.) She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. (T. at 15.) She has the residual functional capacity ("RFC") to perform sedentary work except she has the following additional limitations:

> She can occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl; but, she should never climb ladders, ropes, or scaffolds. [She] can perform frequent rotation, flexion, and extension of the neck. She can frequently reach in all directions with either upper extremity.

(T. at 16.) Plaintiff is capable of performing past relevant work as a software engineer, as generally performed, and she is capable of performing her past composite job as both a software engineer and financial-aid counselor, as actually performed. (T. at 19-20.) Alternatively, although Plaintiff is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. (T. at 20.) The ALJ therefore concluded she is not disabled. (T. at 21.)

### D. The Parties' Contentions

Generally, Plaintiff argues the ALJ erroneously failed to fully develop the record with respect to the non-exertional requirements of her past relevant work. (Dkt. No. 11.) Plaintiff contends the ALJ's determination that she could perform past relevant work, while limited to frequent rotation, flexion, and extension of the neck, made without the benefit of vocational expert testimony is unsupported by substantial evidence and amounts to remandable error. *Id*. at 5-6. To that end, Plaintiff claims "there is no evidence within the claims file indicating the degree or frequency of neck movement in any of [Plaintiff's past] positions," therefore, the ALJ's decision "is not supported by any evidence at all." *Id*. at 6.

Further, with respect to the ALJ's alternative step five findings, Plaintiff argues that use of a vocational expert was required because non-exertional impairments such as Plaintiff's neck movement limitations significantly limit employment opportunities. *Id*. at 7-8. She contends "there was nothing within the record or decision to indicate that the non-exertional impairments related to the movement of the neck do not have a significant impact on employment opportunities," therefore, other evidence was required to prove that jobs existed in the national economy that Plaintiff could perform. *Id*.

Defendant responds the ALJ's decision was supported by substantial evidence and the record was sufficiently developed. (Dkt. No. 18.) The Commissioner emphasizes that Plaintiff is the primary source for information about the demands of her past work. *Id*. at 7-8. Defendant argues "[t]he ALJ's decision reflects consideration of the evidence Plaintiff provided, including her hearing testimony and work report . . . [and] . . . the [Dictionary of Occupational Titles ("DOT")] job descriptions and the agency's subregulatory rulings" and no further evidence was needed to conclude Plaintiff could perform her past relevant work. *Id*. at 9. Additionally,

Defendant asserts any error at Step Four was not prejudicial because substantial evidence supports the ALJ's alternative Step Five finding that Plaintiff was not disabled. *Id*. at 12-15. To that end, Defendant argues the ALJ's reliance on the Medical-Vocational Guidelines (the "Grids") was appropriate notwithstanding Plaintiff's neck movement limitations. (T. at 20-21.) Thus, Defendant contends the Commissioner's decision should be affirmed.

## II.     RELEVANT LEGAL STANDARDS[2]

### A.     Standard of Review

A court reviewing a final decision by the Commissioner under 42 U.S.C. § 405 does not determine de novo whether Plaintiff is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court must review the administrative record to determine whether there is "substantial evidence . . . to support the Commissioner's decision," and whether "the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The determination of the Commissioner will be reversed only if the correct legal standards were not applied, or if the decision was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

"Substantial evidence" is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It has been defined as "such relevant evidence as a reasonable mind might

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983). Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). Rather than cite to relevant regulations under both 20 C.F.R. § 404.1501 *et seq.* (governing disability insurance) and 20 C.F.R. § 416.901 *et. seq.* (governing supplemental security income), the Court will cite to the disability insurance regulations. *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000). Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

accept as adequate to support a conclusion." *Williams ex re. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine [] whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id*. (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). The Commissioner's findings "will be sustained if supported by substantial evidence, even where substantial evidence may [also] support plaintiff's position and despite that the court's independent analysis may differ." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)). In other words, this Court "may not substitute its own judgement for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(1)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the Step Five to prove that the plaintiff-claimant is capable of working. *Id*.

### III.   DISCUSSION

This case concerns a narrow challenge to the sequential evaluation process at Step Four. Unlike most social security cases, Plaintiff does not challenge the ALJ's RFC assessment. As noted above, she argues the ALJ failed to develop the administrative record because there is no evidence concerning the degree or frequency of neck movement required by her past relevant work. (Dkt. No. 11 at 5-7.) Therefore, Plaintiff contends the ALJ's Step Four determination that she could return to her past relevant work despite being limited to sedentary work and "frequent

7

rotation, flexion, and extension of the neck" is unsupported by substantial evidence. *Id*. at 5-7. Further, Plaintiff argues the Commissioner's Step Five finding is also unsupported because vocational expert testimony was required to determine the availability of other jobs she could perform. *See id*. at 7-8.

Generally, at Step Four, the ALJ "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [plaintiff's] past relevant work." 20 C.F.R. § 404.1520(f). "Past relevant work" is "work that [plaintiff has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [plaintiff] to learn to do it." *Id*. § 404.1560(b)(1). If, based on that comparison, the plaintiff is able to perform her past relevant work, the ALJ will find the plaintiff is not disabled within the meaning of the Act. *Id*. § 404.1520(f).

The inquiry at Step Four requires separate evaluations of the previous specific job and the job as it is generally performed. *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *see Abbott v. Colvin*, 596 F. App'x 21, 23 (2d Cir. 2015) ("[D]etermination of a claimant's ability to perform past relevant work requires, at the very least, 'a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; [and] (2) medical evidence establishing how the impairment limits [his or her] ability to meet the physical and mental requirements of the work.'"). Plaintiff has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); *see also* SSR 82-62, 1982 WL 31386, at *3 (Past relevant work in the fourth stage of the inquiry includes "the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy.").

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands; and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3. The "DOT is used to evaluate jobs as they are generally performed." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011). However, a vocational expert may offer specific testimony "to explain the requirements of particular jobs." *Jasinski*, 341 F.3d at 185.

The ALJ will deny benefits at Step Four if the claimant "can meet the demands of [her] previous work, either as [she] actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). When the ALJ finds that a plaintiff can perform her past relevant work, the decision must contain a specific finding of fact (1) as to plaintiff's RFC; (2) as to the physical and mental demands of the past relevant work; and (3) that plaintiff's RFC permits her to return to her past relevant work. *Sims v. Comm'r of Soc. Sec.*, No. 17-CV-798, 2019 WL 421483, at *3 (W.D.N.Y. Feb. 4, 2019).

Here, Plaintiff had past relevant work as a software engineer and financial-aid counselor. In her work report, Plaintiff outlined the requirements of her software engineer and financial-aid counseling work. (T. at 243-254.) She reported these jobs required no lifting, required walking about 1 hour per day, standing 15 minutes, and sitting for 6 hours and 45 minutes in an average 8-hour workday. (T. at 252-54.) Plaintiff would spend 7 hours of a typical workday writing or typing. *See id*. She indicated the demands of these different jobs from 2002 through 2012 were very similar, but that in one job, she also supervised six people, and at another job, she worked up to ten hours a day. *See id*.

During the December 3, 2019, hearing, where she was represented by counsel, Plaintiff also explained the requirements of her past jobs. (*See* T. at 34-52.) Plaintiff testified that almost

9

all her office jobs "only required some minor lifting of a laptop" and explained most of her time at work was spent seated at a desk, but she would occasionally walk to meetings. (T. at 35.) She also discussed her then-current job as "prep cook." (T. at 39-41.) Plaintiff testified she works 12 hours each week, and her job is to "set tables and put fruit in cups" and occasionally run across town to deliver items. (T. at 39-40.)

Plaintiff also described her symptoms, including "severely debilitating migraines and headaches," "problems being able to lift . . . [her] arms at [her] shoulders," "numbness and tingling," "overall pain in [her] neck and shoulders . . . [that] goes all the way down [both] arm[s]," and pain at fibromyalgia tender points. (T. at 42-44.) She was also asked about the range of motion of her neck, and Plaintiff explained she was unable to turn it all the way to the left, and limited in moving her neck back and forward. (T. at 43.)

During the hearing, the ALJ asked Plaintiff why she felt she was unable to return to her previous software engineer or financial-aid counseling work. (T. at 58.) Plaintiff first explained she has difficulty sitting for extended periods of time.[3] *Id*. The ALJ asked if those jobs would afford her the ability to sit and stand as needed. *Id*. Plaintiff responded, "[w]ell, then I'd have the problem with my feet hurting me standing up . . . ." *Id*. She explained her symptoms were not a singular problem, rather, she has "[a] multitude of problems, so if it's not [her] back hurting [her], then it will be [her] feet hurting. . . [and she also has] the problems with [her] . . . hands typing. . . ," also, "looking down . . . at a computer [causes her to experience] headaches." *Id*. Plaintiff did not state that any limitations with her neck would affect her current ability to perform her past work. *See id*.

---

[3] Plaintiff stated, "I'm having a hard time just sitting here. In this forty, thirty five minutes talking to you . . . ." (T. at 58.)

10

Following the ALJ's questions, Plaintiff's attorney asked her more questions about her limitations. (T. at 60.) For example, Plaintiff was asked if she would work as a prep cook more than 12 hours per week if she were given the opportunity. *See id*. She responded, "I would love to, but [] can't. The last time I worked over 12 hours I ended up going to the emergency room with a flare up in fibromyalgia . . . ." *Id*. Plaintiff's attorney did not ask any additional questions about her ability to work a job with demands more similar to her previous past work as a software engineer or financial-aid counselor. *See id*.

The ALJ also relied on the DOT to assess whether Plaintiff could perform the job requirements of a software engineer. (T. at 19-20.) It states the software engineer job:

> Researches, designs, and develops computer software systems, in conjunction with hardware product development, for medical, industrial, military, communications, aerospace, and scientific applications, applying principles and techniques of computer science, engineering, and mathematical analysis: Analyzes software requirements to determine feasibility of design within time and cost constraints. Consults with hardware engineers and other engineering staff to evaluate interface between hardware and software, and operational and performance requirements of overall system. Formulates and designs software system, using scientific analysis and mathematical models to predict and measure outcome and consequences of design. Develops and directs software system testing procedures, programming, and documentation. Consults with customer concerning maintenance of software system. May coordinate installation of software system.

*See* DOT No. 030.062-010, 1991 WL 646541.

At Step Four, "[a]fter a review of the evidence and a comparison between the functioning of [Plaintiff] and the requirements of [her past] positions[,]" the ALJ concluded Plaintiff could perform her past relevant work as a software engineer (DOT #030.062-010) and composite job

11

as both a software engineer and financial-aid counselor (DOT #169.267-018), which are considered sedentary, skilled work. (T. at 19.[4])

Plaintiff argues the ALJ failed to develop the administrative record because there is no evidence concerning the degree or frequency of neck movement required by Plaintiff's past work. (Dkt. No. 11 at 5-7.) Therefore, Plaintiff contends the ALJ's Step Four finding that she could perform her past relevant work despite being limited to "frequent rotation, flexion, and extension of the neck" is unsupported by substantial evidence. *Id*. at 5-7. The Court has considered these arguments and finds them to be without merit.

The Court is satisfied the ALJ conducted a "careful appraisal" of Plaintiff's statements about which past work requirements she could no longer meet and the reasons for her inability to meet these requirements. *See Abbott*, 596 F. App'x at 23. During the hearing, the ALJ directly asked Plaintiff why she felt she was unable to return to work as a software engineer. (T. at 58.) Plaintiff's answer mentioned difficulty sitting; foot pain; back pain; hand problems; and headaches. *See id*. Plaintiff's explanation as to why she could not perform past work omitted any mention of neck movement requirements. *See id.*; Dkt. No. 11 at 7. Plaintiff's written reports were silent about any job requirements relating to neck movement. (*See* T. at 252-54.) However, Plaintiff's testimony and work reports did describe the requirements of these past jobs, including some lifting, sitting, and typing, and why she felt she was unable to perform these tasks. (*See* T. at 34-52, 243-54.) The ALJ's decision incorporated these statements, citing to the

---

[4] *See* DOT No. 030.062-010, 1991 WL 646541 ("STRENGTH: Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work invoves [sic] sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occsasionally [sic] and all other sedentary criteria are met.").

12

record and reflecting consideration of the information Plaintiff provided. (*See* T. at 19-20.) In other words, Plaintiff identified the requirements of her past work and explained those which she could not meet, and the ALJ "carefully apprais[ed]" this evidence in his decision as required by *Abbott*. *See* 596 F. App'x at 23; SSR 82-62 (Plaintiff "is the primary source for vocational documentation, and statements by [Plaintiff] regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.").

As pointed out by the Commissioner, Plaintiff appears to suggest that the position of software engineer may require more than frequent neck movement, i.e., "constant" neck movement. (Dkt. No. 18 at 10, citing Dkt. No. 11 at 6.) However, as discussed, Plaintiff has not provided any evidence to support this theory, as it is her burden to do. *See* SSR 82-62, 1982 WL 31386, at *3 ("[t]he claimant is the primary source for vocational documentation . . ."); *Jasinski*, 341 F.3d at 182 ("the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally.") Additionally, nothing in the DOT description suggests a need to move the neck constantly. *See* DOT No. 030.062-010, 1991 WL 646541.

This Court is also satisfied that the ALJ completed a "careful appraisal" of the medical evidence establishing how Plaintiff's impairments limit her ability to meet the physical and mental requirements of her past work. *See Abbott*, 596 F. App'x at 23. The ALJ's narrative discussion demonstrates that he reached a series of reasonable, supportable conclusions about Plaintiff's limitations based on substantial evidence in the record, including findings from consultative examiner Dr. Elke Lorensen, M.D., Nurse Mylene Jumalon, A.R.N.P., and state agency medical consultants Drs. Poss and Uppal. (*See* T. at 18-19.)

Dr. Lorensen examined Plaintiff on January 16, 2019. (T. at 610-14.) On exam, Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. at 612.) The ALJ discussed Dr. Lorensen's findings, including limitations in Plaintiff's ability to perform lifting, reaching, bending, and squatting, and found Dr. Lorensen's assessment a "depiction of a generally sedentary exertion level, with additional postural and manipulative restrictions." (T. at 19, 610-14.) The ALJ deemed Dr. Lorensen's conclusions both persuasive and consistent with the record. (T. at 19.)

Overall, Dr. Lorensen's assessment revealed Plaintiff could perform sedentary work, with some additional restrictions, and the ALJ concluded Plaintiff retained the RFC to perform sedentary work, with some additional limitations. (T. at 16-19.) Specifically, the ALJ noted "[w]ith respect to the manipulative limitations, [Plaintiff] has good use of her hands, fingers, and neck movement for sedentary work. [Plaintiff] is capable of frequent reaching, along with frequent flexion, extension, and rotation of the neck, with no other significant limitation involving her upper extremities . . . ." (T. at 25.[5]) The ALJ also discussed that Plaintiff's past relevant work did not require more than sedentary exertion, and the work "was generally performed sitting at a desk, and required her to lift only light objects[.]" (T. at 19-20.) Therefore, this Court is satisfied the ALJ "carefully apprais[ed]" medical evidence on the limiting effect of Plaintiff's impairments as those impairments relate to Plaintiff's ability to perform past work.

Because the ALJ properly considered the requirements of Plaintiff's past relevant work and the extent to which her impairments limit her ability to perform that type of work, the ALJ's

---

[5] SSA rulings consider neck movement necessarily related to manipulative (and postural) limitations. *See, e.g.*, SSR 83-14, 1984 WL 31254, at *2 (Jan. 1, 1983) ("[A] person must have certain use of the arms and head to grasp, hold, turn, raise, and lower objects.").

14

decision is consistent with the Court's guidance in *Abbott*. Thus, remand is not warranted on this ground.

This Court also finds the ALJ fully developed and explained the determination that Plaintiff retains the RFC to perform past work. *See Abbott*, 596 F. App'x at 23. As set forth above, in her testimony before the ALJ, Plaintiff explained why she believed she was unable to return to this past work. (*See* T. at 58.) Plaintiff's explanation did not indicate her neck problems would at all affect her ability to perform her past work. *See id*. Plaintiff's testimony established that a person with her RFC would be able to perform her past work although she was limited to frequent neck movement. Therefore, the Court is satisfied the ALJ's conclusion that Plaintiff's past work "does not require the performance of work-related activities precluded [by Plaintiff's RFC]" was supported by "such relevant evidence as a reasonable mind might accept as adequate to support [that] conclusion." (T. at 19); *see also Williams*, 859 F.2d at 258 (citations omitted). In sum, Plaintiff's argument that the ALJ failed to fully develop the record and explain his conclusions is unpersuasive. *See Vicky M. v. Comm'r of Soc. Sec.*, No. 8:17-cv-521 (DJS), 2018 WL 4119112, at *9 (N.D.N.Y. Aug. 28, 2018) ("Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.").

This case is distinguishable from *Abbott* where the ALJ failed to address non-exertional demands of past work that were repeatedly emphasized by the plaintiff. *See* 596 F. App'x at 23. Here, the ALJ specifically inquired what non-exertional requirements Plaintiff was unable to meet with her current RFC, and Plaintiff's response indicated that the limited range of motion in her neck was not a factor which would preclude her from performing that work. (*See* T. at 58.)

15

Further, as discussed *supra*, this Court is satisfied the ALJ conducted a "careful appraisal" of how Plaintiff's non-exertional limitation(s) would affect her ability to perform past work. The ALJ's decision reflected an understanding and discussion of both Plaintiff's RFC and the non-exertional requirements of Plaintiff's past work. (*See* T. at 19-20.)

Indeed, the ALJ compared Plaintiff's RFC with the requirements of her past work and determined that an individual who was limited to performing "frequent rotation, flexion, and extension of the neck" would be able to perform Plaintiff's past relevant work. *See id*. Nothing else in Plaintiff's work history report or testimony suggested otherwise. The ALJ thus had sufficient evidence to conclude Plaintiff retained the RFC to perform the non-exertional requirements of her past work with respect to neck movements. Nothing more was required. *See Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959, 2015 WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) ("[I]f all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence") (citing 20 C.F.R. § 404.1520b(a)).

Plaintiff also takes issue with the Step Four finding because the ALJ did not rely on a vocational expert's testimony. (Dkt. No. 11 at 6.) "While an expert is often called upon to explain the requirements of particular jobs . . . step four of the analysis does not require that an ALJ consult an expert." *Petrie*, 412 F. App'x at 409; *Hackett v. Comm'r of Soc. Sec.*, No. 5:16-692, 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ("At step four of the disability analysis, the ALJ has the option to rely on [vocational expert] testimony."). Here, the Court agrees with the Commissioner that vocational expert testimony was not necessary because the evidence and information relied on by the ALJ—Plaintiff's testimony and the DOT—adequately support that Plaintiff could perform her past relevant work. (Dkt. No. 18 at 11-12.)

16

Finally, Plaintiff notes that the ALJ's decision "cites to [several SSRs] to support the contention that manipulative limitations would not significantly erode the sedentary base," but these SSRs and the DOT "are essentially silent regarding the non-exertional limitations imposed by an inability to maneuver the head and neck." (Dkt. No. 11 at 6-7 (citing *Hopkins v. Comm'r of Soc. Sec.*, No. 6:13-CV-1082, 2015 WL 4508630, at *4 (N.D.N.Y. Jul. 23, 2015)). Plaintiff is correct that the SSRs and DOT alone *may* not support the conclusion that Plaintiff's past relevant work could be performed by an individual limited to frequent rotation, flexion, and extension of the neck. However, as discussed, the ALJ's conclusion was also supported by Plaintiff's testimony about the requirements of her past work, and as previously established, "statements by the [Plaintiff] regarding past work are generally sufficient for determining the skill level; exertional demands; and nonexertional demands of [past relevant] work." SSR 82-62, 1982 WL 31386, at *3. *See also* 20 C.F.R. § 404.1560(b)(2) ("We *may* use the services of vocational experts or vocational specialists, or other resources, such as the [DOT] . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your [RFC].") (emphasis added).

Based on the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports the Commissioner's Step Four determination. Remand is therefore not warranted. Because this conclusion is, by itself, enough to support affirmance of the Commissioner's decision denying Plaintiff benefits, Plaintiff's Step Five argument is moot.[6]

**ACCORDINGLY**, it is hereby

---

[6] *See Barnhart*, 540 U.S. at 24 ("If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further"); 20 C.F.R. § 404.1560(b)(2) (if an individual has the RFC to perform past relevant work, a determination of "not disabled" is required).

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 1, 2022
       Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge